USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 5
DATE FILED: 6/6/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

In re:

KARTA CORP.
KARTA CONTAINER & RECYCLING, INC.
GLOBAL RECYCLING & COLLECTION, INC.,

Debtors.

Confirmed Chapter 11

02-22028 (ASH)
02-22029 (ASH)
02-22030 (ASH)
(Jointly Administered)

---------------------------------------------------------------x

PASQUALE CARTALEMI, individually and in his
capacity as a shareholder of Karta Industries, Inc. and
as a partner of P&K Realty Co.,

Appellant,

-against-

KARTA CORP., KARTA CONTAINER &
RECYCLING, INC., GLOBAL RECYCLING &
COLLECTION, INC., KENNETH CARTALEMI,
MARIA CARTALEMI and GLOBAL LAND, INC.,

Appellees.

06-Civ-3602 (CM)

On Appeal from the
Bankruptcy Court

---------------------------------------------------------------x

## DECISION AND ORDER AFFIRMING JUDGMENT OF BANKRUPTCY COURT ENJOINING PROSECUTION OF A CERTAIN LAWSUIT IN THE NEW YORK STATE SUPREME COURT

McMahon, J.:

This appeal addresses the propriety of an Order and Judgment of the United States Bankruptcy Court (Hardin, J.), dated May 10, 2006, enjoining Appellant Pasquale Cartalemi. Sr. ("Pat") from prosecuting an action entitled <u>Pasquale Cartalemi, Sr., individually and as a shareholder of Karta Industries, Inc., and as a partner of P&K Realty Co. v. Kenneth Cartalemi, Maria Cartalemi, and Global Land, Inc.</u>, Index No. 4669/06 (the "2006 state court action"), currently pending in the New York State Supreme Court.

Copies mailed / handed / faxed to counsel 6/1/06

## Issue on Appeal

The issue on appeal is whether the Bankruptcy Court erred in permanently enjoining Pat from prosecuting his 2006 state court action?

## Facts

All facts pertinent to this appeal (and a great many background facts that, while not strictly relevant, are useful in understanding the issue on appeal), are set forth in a companion opinion, issued on May 22, 2006, modifying and affirming the Bankruptcy Court's Confirmation of Debtors' Fifth Amended Joint Plan of Reorganization ("the Plan"). Familiarity with that opinion is assumed.

This appeal specifically relates to an action brought by Pat in the New York State Supreme Court, Westchester County, on March 16, 2006, against Ken Cartalemi (Pat's son), Maria Cartalemi (Ken's wife), and Global Land Inc. (a real estate holding company owned by Ken, Maria and their children, in which Pat has no interest). The verified complaint asserts 13 causes of action, in which Pat seeks each of the following:

(1) Damages for Ken and Maria's alleged breach of fiduciary duty and self-dealing for leasing properties owned by Global Land (including the 1011 property), beginning in May 2002, but not leasing the 1017 property owned by KI;

(2) Damages for Ken and Maria's alleged breach of fiduciary duty and self-dealing for leasing properties owned by Global Land (including the 1011 property), beginning in May 2002, but not leasing the 1014 & 1016 properties owned by P&K Realty;

(3) Damages for Ken and Maria's alleged breach of fiduciary duty and self-dealing in connection with their leasing Building 3 on the 1011 property (owned by Global Land) for substantially more rent than that charged for the entire 1017 property (owned by KI);

(4) Imposition of a constructive trust on the 1011 property (owned by Global Land) as a result of Ken's alleged breach of Pat's right of first refusal with respect to the sale of the 1011 property from Travis Lane to Global Land;

(5) Damages for Ken's alleged failure to pay Pat his proportionate share of the proceeds from the sale of the 1011 Property from Travis Lane to Global Land;

(6) Damages for Ken's alleged wrongful transfer of permits belonging to KI (issued by Peekskill) to Karta Corp. and others;

(7) Damages for Ken and Maria's alleged breach of fiduciary duty in connection with the Peekskill Settlement Agreement;

(8) Imposition of a constructive trust and equitable lien on the 1070 property (owned by Global Land), as a result of certain provisions in the Peekskill Settlement Agreement;

(9) Damages for Ken and Maria's alleged failure to obtain requisite shareholder approval of KI in connection with KI's guarantee of various obligations under the Plan;

(10) Damages for Ken and Maria's allegedly oppressive and malicious conduct toward Pat as a result of all of the above;

(11) Damages for Ken and Maria's alleged fraud and deception as a result of all of the above;

(12) Damages against Ken for *prima facie* tort as a result of all of the above; and

(13) An accounting of the income, rents and profits of KI, Travis Lane, P&K Realty and Global Land.

On May 10, 2006, Judge Hardin entered a Judgment permanently enjoining prosecution of Pat's 2006 state court action. On May 11, 2006, Pat filed a Notice of Appeal of the Bankruptcy Court's May 10 Judgment. The following day, this Court heard oral argument on Pat's appeal from the Bankruptcy Court's May 10 Judgment, as well as his appeal from the Bankruptcy Court's April 28 Order Confirming Debtors' Fifth Amended Joint Plan of Reorganization.[1] In an Order issued on May 22, 2006, this Court modified and affirmed the Bankruptcy Court's Confirmation of the Plan.

### Decision on Appeal

For the reasons discussed below, the Court modifies the May 10 Judgment by vacating the injunction against the prosecution of Pat's fifth state court cause of action, and otherwise affirms the Judgment.

---

[1] Knowing that Judge Hardin had ruled against Pat on the issue of the injunction, and that he was only awaiting the entry of an appealable paper before coming to the district court, the Hon. Charles L. Brieant, U.S.D.J., at the behest of and with the consent of all parties, consolidated the then pending appeal from the Order confirming the plan with the anticipated appeal from the Judgment enjoining the prosecution of the 2006 state court action.

## Discussion

Appellant argues that the Bankruptcy Court had no authority to enjoin him from prosecuting his 2006 state court action against Non-Debtors Ken and Maria (in their capacity as officers and directors of Karta Industries, a corporation in which Ken and Appellant each have a 50% equity interest) and Global Land for, *inter alia*, breach of fiduciary duty in connection with business dealings with KI. Accordingly, Appellant maintains that the injunction should be vacated in its entirety.

Appellees counter that, "[T]he outcome of [Pat's state court action] could conceivably have an[] effect on the estate being administered in bankruptcy," and thus that the Bankruptcy Court had "related to" jurisdiction over the 2006 state court proceeding, see, e.g., Karta Corp. v. Mayor & Members of the Common Council of the City of Peekskill, 296 B.R. 305, 310 (S.D.N.Y. 2003); that Pat consented to Bankruptcy Court jurisdiction over the related properties by filing an adversary proceeding in 2002; that Pat could not bring an action against Ken and Maria– principals and officers of debtors-in-possession– without seeking leave of the Bankruptcy Court; and that, because several of Pat's state court claims overlap with his Objections to Debtors' Disclosures and to the Plan, the Bankruptcy Court properly considered Pat's state court claims. Appellees further highlight the Bankruptcy Court's conclusions that each of Pat's state court claims either lacks merit or is barred by laches, statute of limitations, or res judicata.

The fact that the Plan releases Ken, Maria and Global Land from all claims related to the administration of the Estate and the on-going reorganization, and that this Court has (with a minor modification) affirmed those Non-Debtor Releases (see Decision and Order dated May 22, 2006), does not moot this appeal. The modified Releases do afford an absolute defense to most of the state law claims. However, the parties would have to go to the state court to assert this defense. Enjoining Pat from pursuing his state law claims saves the Released Non-Debtors the trouble of doing that.

### Claims 1, 2, 3, 6, and 9

Pat's prosecution of his first, second, third, sixth and ninth causes of action was properly enjoined because all of those claims (1) relate to the administration of the bankruptcy Estate, and (2) were actually adjudicated by Judge Hardin in the Bankruptcy Court.

Pat can be enjoined from bringing these claims in the state court because each of them was raised by Pat before the Bankruptcy Court – either in his Objection to Debtors' Disclosure Statement and/or in his Objection to the Plan.

For example, in his Objection to Debtors' First Amended Joint Disclosure Statement, Pat asserted (as support for his position that the Disclosure Statement and the Plan were presented in bad faith) that, "In May, 2002 . . . [Debtors sought] approval to enter into leases between Debtors and Global Land, Inc., a company owned by Kenny and his wife. However, Debtors made no

4

attempt at that time (or in the nearly 4 years since) to enter into a lease for any of the properties owned by Pat Sr., including the 1017 property (or the 1014 and 1016 Lower South Street properties– all of which are utilized by the Facility)." (See Objection to Debtors' First Amended Joint Disclosure Statement at ¶ 26). This is the same claim raised by Pat in his first and second causes of action in the 2006 state court action.

Likewise, Pat raised the precise claims alleged in his third, sixth, and ninth causes of action in his Objection to Debtors' Third Amended Joint Plan of Reorganization, where he stated: "The Operating Permits for the 1017 Property were issued to KI which is not a proponent of the Plan and is not a debtor before this Court . . . [thus they] cannot be assigned by the Debtors;" "Kenneth has no authority to cause KI to execute a guaranty or take any other actions under the Plan, which are not in the ordinary course of KI's business, since it has not been approved by 2/3 of the shareholders;" and "[Ken's breach of fiduciary duty and conflict of interest are] reflected in the rents to be paid under the leases to Global Land (his and his wife's company alone) and to KI (Pat Sr.'s company) . . . The rent for the sublease of the entire 1017 property (approximately 2 acres) is $180,000 per year, while the rent for one building (approximately 20,000 square feet) on the 1011 property (which is owned by Kenneth's company) was set at $480,000 per year." (Objection to Debtors' Third Amended Joint Plan of Reorganization at ¶¶ 49, 52, 57; see also Objection to Debtors' First Amended Joint Disclosure Statement at ¶¶ 21-23).

Because Pat objected to the confirmation of the Final Plan of Reorganization on the very same grounds that he now asserts in the 2006 state court action, Judge Hardin had no choice but to consider these issues prior to confirmation of the Plan. He was not wrong to do so. "The bankruptcy courts are the appropriate forum to resolve objections to confirmation, lest the bankruptcy courts become mere way stations en route to [some other] court." Troy Sav. Bank. v. Travelers Motor Inn, Inc., 215 B.R. 485, 491-2 (N.D.N.Y. 1997).

The Final Plan contains releases of Ken, Maria and a number of Debtor Affiliates (including Global Land) from "all claims that are potentially viable against the Released Parties."[2] (Plan at ¶ 6.4). As Judge Hardin recognized, "In order to assess whether or not there is some legitimate potential claim that could have been affected by these releases I do need to go through all of the these claims and to assess whether there is any non-frivolous basis for any of them because if there were, I would deal with it and I would require the debtors or Ken or somebody to deal with it . . ." (4/27/06 Tr. at 205-6). And he did so. At the Plan Confirmation Hearing, Judge Hardin took testimony, heard argument, and rejected each of the objections to the Plan that are also asserted as claims in the 2006 state court action. Indeed, he concluded that they were "utterly without foundation," (Id. at 211), explaining, "No support, no basis for any of those claims has been articulated let alone substantiated by any evidence and there has been

---

[2] In its May 22 Order, this Court modified the Releases by limiting them to claims related to the operation and management of the carting/ recycling business operated by Debtors and their Affiliates in Peekskill, New York.

opportunity to conduct discovery and generate and present evidence including even the testimony of Pat Senior if there were any to present." (Id. at 211-12). Specifically, Judge Hardin found that claims 1, 2, and 6 were time-barred; that claim 9 was meritless; and that (with respect to claim 3), the allocation of rents between the 1011 and 1017 properties was fair and that the purported rent discrepancy was more apparent than real. (See id. at 164, 187, 198). While the monthly rent charged for the 1017 property is less than that charged for the 1011 property, other obligations on the 1017 property, such as taxes (including back taxes), the City's hosting fee, and a substantial sum for improvements, eliminated all but about $10,000 of the discrepancy. Accordingly, Judge Hardin concluded, "It seems evident to me that not only has Pat, Sr. not been disadvantaged at all by reason of this transaction, but Ken and his interests and his family have made a very, very substantial excess contribution to preserving, saving and fostering Pat, Sr.'s interest in the 1017 property." (Id. at 164).

Pat's contention that he lacked proper notice or an opportunity to take discovery in connection with these claims is specious. He had notice of the aspects of the Plan that gave rise to these claims, because he asserted them as objections! Pat cannot claim that notice was belated, because he filed his objections on (and thus had notice prior to) February 3, 2006 and April 19, 2006– before the April 27 Confirmation Hearing. If he wanted discovery he could have obtained it in the Bankruptcy Court. If he needed the final hearing adjourned to accommodate discovery, he could have made that request of Judge Hardin.

Pat's contention that he has a right to raise these claims because Ken's and Maria's bona fides as fiduciaries was not before the Bankruptcy Court (since Ken and Maria and Global Land, their family corporation, were not Debtors) is also without merit. Pat brought his 2006 state court action against Ken and Maria in their capacity as officers and directors of KI. As this court concluded in affirming Judge Hardin's confirmation of the Plan, KI is "inextricably involved with the bankruptcy." (4/27/06 Tr. at 180). KI is nothing more than an extension of the Debtor entities. It is one part of a single, integrated operation, the other parts of which are Debtors in bankruptcy. The only reason KI was not put into bankruptcy is because doing so would have violated the terms of the IDA loan. KI has no employees, does not pay taxes, and has no operations of its own. All of its expenses are, and always have been, paid by Debtors. Accordingly, any judgment against Ken or Maria in their capacity as officers and directors of KI would really be a judgment against Debtors and the property of Debtors' Estate.

Ken's actions as the manager of the integrated enterprise and Ken's decisions as the managing partner of KI were necessarily intertwined, and the propriety of Ken's managerial decisions (such as his apportionment of the rents or his pledge of the assets of KI) were the very issues that Judge Hardin determined over Pat's strenuous objection. As the Plan was ultimately found to be fair and confirmable, challenges to Ken's and Maria's actions as fiduciaries are necessarily without merit; as the learned Bankruptcy Judge noted, if there were merit to Pat's objections, then "Ken or somebody [would be required to] deal with it . . ." (4/26/06 Tr. at 211).

Finally, Ken, Maria and Global Land, in all capacities, have been released from liability

6

on these claims as part of the Plan, and that release was sustained on appeal by this Court (with minor modifications that relate, if at all, only to the fifth cause of action). By enjoining Pat from prosecuting these claims, Judge Hardin did no more than enforce the Release he had just ordered. That is the end of the matter.

Judge Hardin was also authorized to enjoin Pat from prosecuting these claims pursuant to 11 U.S.C. § 105(a), which provides: "The [bankruptcy] court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the bankruptcy Code] . . ." The Second Circuit has "repeatedly emphasized the importance of the bankruptcy court's equitable power," holding that § 105(a) should be "construed liberally to enjoin [actions] that might impede the reorganization process." In re Momentum Mfg. Corp., 25 F.3d 1132, 1136 (2d Cir. 1994). Pat's first, second, third, sixth and ninth state court claims had a direct impact on the Estate – indeed, were asserted as challenges to the Plan – and so Judge Hardin properly enjoined them. As he noted, the assertion of these claims was nothing more than a last minute attempt to throw a monkey wrench into the reorganization Plan.

Claims 10, 11 and 12

Unlike the claims discussed above, Pat's tenth, eleventh, and twelfth causes of action– alleging oppressive and malicious conduct, fraud and deception, and intent to inflict injury on Pat, respectively– were not asserted as Objections to Debtors' Disclosure Statement or to the Plan. However, the predicate for each of these claims are the activities the underlay the first, second, third, sixth and ninth claims in the 2006 state court action – the alleged breaches of fiduciary duty that created the purported inequities that were asserted as objections to the Plan. Because these claims are purely derivative of the claims discussed above, prosecution of them was also properly enjoined by Judge Hardin.

Pat's tenth cause of action, for example, asserts that Ken and/or Maria ". . . have filed the Bankruptcy Petition without Pat Sr.'s consent; have opposed Pat Sr.'s claim in the Bankruptcy Proceeding; have attempted to "cram down" the Proposed Plan on Pat Sr., despite provisions in the Proposed Plan to impose the burdens of the Proposed Plan on companies in which Pat Sr. has an interest; and have sought releases in the Bankruptcy Proceeding for themselves." (Cplt. ¶ 190). That Pat was attempting to frustrate the resolution of the bankruptcy litigation is apparent from this language. It was perfectly appropriate for the Bankruptcy Court, having resolved Pat's various objections to the Plan, to enjoin him from attacking the resolution of the bankruptcy collaterally in the State Supreme Court.

Because these claims derive from the alleged breaches of fiduciary duty that purported to result from Bankruptcy Court-approved transactions, they, too, are covered by the Non-Debtor Releases that were approved by the Bankruptcy Court and affirmed by this Court. The injunction entered by Judge Hardin against Pat gives effect to those Releases.

Appellant's argument that enjoining the prosecution of these particular claims would

7

prevent him from obtaining redress for torts committed by Ken and Maria that have no relationship to the bankruptcy is, with all due respect, absurd. Judge Hardin did not enjoin Pat from ever bringing suit against Ken and Maria and Global Land – he enjoined the prosecution of a single lawsuit, in which the claims were clearly related to the bankruptcy proceeding and were designed to frustrate the reorganization even if it were approved. If Ken commits a tort or defrauds his father in the future, Pat will have his remedy.

Claim 7 & 8

Judge Hardin also properly enjoined Pat from prosecuting his seventh and eight causes of action.

Neither of these claims was raised as an Objection to Debtors' Disclosure Statement or to the Plan. Indeed, Pat's eighth claim relates specifically to a parcel of property located at 1070 Lower South Street (the "1070 property"), which is not an integral part of the Cartalemi carting business and is completely unrelated to the underlying bankruptcy.

However, prosecution of these claims was properly enjoined because it would constitute an impermissible collateral attack on the Peekskill Settlement Agreement, which the Bankruptcy Court approved (again, after giving Pat an opportunity to object) more than a year ago, and which was integral to the formulation of the Plan of Reorganization that was ultimately approved. "Without [the Peekskill Settlement], business was done . . . it was absolutely essential to the preservation of any value at all in Karta Industries." (4/27/06 Tr. at 208). Moreover, "[I]t would [undermine] the plan if the lawsuit could go ahead with regard to transactions [such as the Peekskill Settlement] that basically brought us to the point where [we are today]." (Id. at 27).

While these two claims seek different remedies (the seventh seeks damages while the eighth seeks imposition of a constructive trust), they both challenge certain provisions of the Peekskill Settlement, including the adequacy of consideration for the sale to the City of Peekskill of the 1017 property (the so-called "Sunset Provision"), and the operation of a new transfer station at the 1070 property, which is owned by Global Land.

As Judge Hardin emphasized, "The entire [Peekskill] settlement was presented to the whole universe including Pat Senior. He had notice of it. Everybody in the world with any interest in these entities had notice of it. It was approved. It could have been objected to." (4/27/06 Tr. at 200). Pat had notice and an opportunity to be heard on any objections he may have had to the Settlement. However, he did not object at any time between January 2005, when the Settlement was presented, and April 2005, when it was approved by Judge Hardin and affirmed by this Court. Thus, Pat waived his right to challenge the Settlement. He cannot now– a year after the Settlement was approved– attack the Settlement in the State Supreme Court. Pat's attempt to disguise the claim as one for breach of fiduciary duty is unavailing.

It is irrelevant that Pat seeks only damages and imposition of a constructive trust, as

8

opposed to revocation of the Settlement. In Judge Hardin's words, "The problem is that if Kenneth had known that somebody was going to seek money damages from him, he might not have done the transaction. That's the problem. That's the whole point . . . That's why we have 9010 motions, why people get notice and the right to be heard. If you're not heard, you're out of luck." (4/27/06 Tr. at 202-3).

Additionally, these claims, too, are covered by the Plan's Non-Debtor Release.

Claims 4 & 5

Judge Hardin's injunction of Pat's prosecution of his fourth and fifth causes of action is more problematic. Both of these claims relate to the sale of the 1011 property from Travis Lane to Global Land in 1998– four years before Debtors filed for Chapter 11 relief and eight years before Pat filed his state court action. In contrast to the Peekskill Settlement Agreement, the sale of the 1011 property was not presented to or approved by the Bankruptcy Court. Indeed, the 1998 transaction is completely unrelated to the bankruptcy and the Debtors' Plan of reorganization.

Nonetheless, concluding that the claim was both untimely and frivolous, Judge Hardin enjoined prosecution of Pat's fifth claim, which seeks damages for Ken's alleged failure to pay Pat his proportionate share of the proceeds from the sale of the 1011 property. I conclude that this went too far.

Even if Judge Hardin is correct about the untimeliness of or lack of merit to the fifth claim, those defects in the claim do not afford a valid basis for the Bankruptcy Court to enjoin prosecution of a claim that has not been removed to federal court and that in no way will "impede the reorganization process." See In re Momentum Mfg. Corp., 25 F.3d at 1136. If this claim is truly time-barred – and on its face, it appears to be time-barred – the state court will declare it so, and may even sanction anyone who attempts to prosecute it.

Pat's fourth claim, which seeks imposition of a constructive trust on the 1011 property in connection with the 1998 transaction, appears to be untimely as well. However, unlike Pat's claim for damages (the fifth cause of action), imposition of a constructive trust on a parcel of land integral to the Cartalemi recycling operations– regardless of the reason for its imposition– would certainly interfere with implementation of the Plan and the administration of the Debtors' Estate. Thus, Judge Hardin properly invoked the Bankruptcy Court's equitable power under § 105(a) to enjoin the prosecution of Pat's fourth claim. Such an injunction was "necessary [and] appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Indeed, "The finding of a constructive trust by the bankruptcy court and a determination of the proper distribution of that trust are intimately tied to the traditional bankruptcy functions and estate, and . . . [are] within the clear jurisdiction of the Bankruptcy Court." Petition of Treco, 205 B.R. 358, 363 (S.D.N.Y. 1997).

Accordingly, Judge Hardin's injunction against the prosecution of Pat's fourth claim is affirmed, but the Judgment is modified to vacate any bar to Pat's prosecution of his fifth claim, for damages related to the sale of the Travis Lane property to Global Land.

Claim 13

Finally, Judge Hardin enjoined Pat from prosecuting his thirteenth claim, which seeks an accounting of the income, rents and profits of KI, Travis Lane, P&K Realty and Global Land. Judge Hardin did not engage in any extensive discussion of this aspect of his stay, but I conclude that it was appropriately granted.

To the extent that these claims are derivative of claims properly enjoined – that is, are based on the transactions that were approved by the Bankruptcy Court – an injunction against their prosecution was permissible. And it appears that Pat's request for an accounting is indeed a derivative claim. Clearly the claim for an accounting from KI, Travis Lane and Global Land were properly enjoined, for the reasons set forth above.[3]

As to P&K Realty: it is a business partnership. As a general rule, upon dissolution of a partnership, any partner is entitled to an accounting. See McKinney's P'ship Law § 74; Aaron v. Aaron, 2 A.D.3d 942, 944 (3d Dep't 2003). Additionally, a court in equity may order an accounting where a partner is wrongfully excluded from the partnership business or possession of its property by his copartners, or where it is otherwise just and reasonable. See McKinney's P'ship Law § 44. Since Pat does not seek dissolution of the partnership, I assume he is proceeding under the latter provision.

The only allegation in the state court complaint that relates in any way to P&K Realty, is a claim that Ken and Maria breached their fiduciary duty to P&K Realty by charging rent on KI's property but not on P&K Realty's property (the second cause of action). Judge Hardin rightly enjoined Pat from prosecuting that claim in state court, both because the issue had been litigated in the Bankruptcy Court and because prosecution of the claim would hamper the effectiveness of the reorganization.

---

[3] KI, Travis Lane, and Global Land are corporations. Under BCL § 720, an officer or director may bring an action (individually or derivatively, on behalf of the corporation) against another officer or director for an accounting. However, Pat is not an officer or director of either Global Land (in which he has no interest) or Travis Lane (which transferred all of its shares to Global Land upon its dissolution several years ago). Nor is Pat an officer or director of KI (having surrendered his seat on the Board and his managerial responsibilities in 1992). Thus, Pat does not appear to be entitled to an accounting from any of these corporate entities. Of course, that particular merits-based determination would ultimately have to be made by the state court. I mention this only to highlight how obvious was Pat's ploy to try to derail or undermine the bankruptcy proceedings.

10

## Conclusion

For the foregoing reasons, Appellant's motion to vacate the Bankruptcy Court's May 10 injunction of Pat's 2006 state court claim is granted in part and denied in part.

This constitutes the decision and order of the Court.

Dated: June 1, 2006.

                                                                                     _____
                                                                                                       U.S.D.J.

BY FAX TO ALL COUNSEL